Anderson and another vs. Johnson and others.

---

ANDERSON and another, Respondents, vs. JOHNSON and others, Appellants.

*February 27 — March 20, 1900.*

*Promissory notes: Defense: Fraudulent transfer: Real party in interest: Counterclaim: Malicious abuse of process: Conspiracy.*

1. In an action upon a note which plaintiffs, for a sufficient consideration, had bought with other assets of the payee, a corporation, at a receiver's sale which had been confirmed by the court, it is no de-

Anderson and another vs. Johnson and others.

fense that plaintiffs had made such purchase intending to hold merely a nominal title to said assets and to allow a stockholder of the corporation to reap the benefit therefrom, in fraud of the other stockholders and creditors of the corporation.

2. A counterclaim in such action, alleging that plaintiffs had conspired with said stockholder to procure the title of the corporate assets in the name of the plaintiffs, but for the real benefit of said stockholder, and alleging, also, a malicious abuse of process by said stockholder against the defendants, but failing to connect plaintiffs therewith by any averment that they had conspired with said stockholder to injure defendants by the malicious use of process, is *held* not to state a cause of action against the plaintiffs.

APPEAL from a judgment of the circuit court for Iowa county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

This is an action on a judgment note given September 9, 1896, for $1,360, by the defendants under the firm name of Johnson, Felland & Co. to the Wagg-Anderson Woolen Company, an Illinois corporation, and afterwards purchased at judicial sale by the plaintiffs as copartners. One branch of the case has been in this court before upon an intervention proceeding, and will be found reported in 101 Wis. 385. In this proceeding it was claimed that the Chicago Title & Trust Company was in fact the owner of the note, but it was held by the circuit court that such claim was not substantiated, and that decision was affirmed in this court.

Upon the return of the case to the circuit court the defendants made answer to the complaint, claiming by way of defense that the plaintiffs were not the real parties in interest, but that one A. J. Anderson, son of the plaintiff *Gilbert Anderson,* and nephew of the plaintiff *Andrew Anderson,* was in fact the owner of the note and the real party in interest. The answer also contained an alleged counterclaim, in which the following facts were set forth:

(1) That the Wagg-Anderson Woolen Company was a corporation, which existed and did business in the city of Chicago until the 25th of January, 1896, one Howard N. Wagg and A. J. Anderson being the principal stockholders.

(2) That on January 25, 1896, A. J. Anderson conceived a plan of defrauding the creditors and stockholders of said corporation and converting the corporate assets to his own use, and caused a fraudulent judgment to be entered on behalf of the Dane County Bank against said corporation, and procured the appointment of the Equitable Trust Company as the receiver of the said corporation, and on the 27th of February following procured a decree of court appointing one Forey as receiver in place of the trust company, and authorizing him to compromise the debts of the corporation at sixty-five cents on the dollar in notes indorsed by A. J. Anderson, and to carry on the business of the corporation with A. J. Anderson, and that the business was so carried on until July, 1896, when the firm of Anderson & Co. (the plaintiffs herein) proposed to buy the remaining stock and pay all debts; but that the plaintiffs really had no interest in the matter, but made said proposition for the benefit of A. J. Anderson.

(3) That on the 9th of December, 1896, the defendants were partners in business at Madison, Wisconsin, the defendant *Helmer Hanson* being a nominal member of the firm only and a judgment debtor of the Wagg-Anderson Company in the sum of $300, but that he had been discharged from his debts in insolvency proceedings.

(4) That on the 15th of August, 1896, A. J. Anderson came to Madison, and threatened one C. O. Felland, a clerk of the defendants, that he would issue execution on the old judgment in favor of the Wagg-Anderson Company against *Helmer Hanson* unless the defendants' firm gave him a note for $300, due in one year, which note said Felland finally gave.

(5) That on the 9th of September, 1896, the defendants were indebted to the Wagg-Anderson Company upon account in the sum of $1,359.60, and that on that day they settled said account with said A. J. Anderson by giving

him a four-months judgment note, signed in the firm name, for $1,360, being the note in suit; that $300 was paid in instalments thereafter upon said note, but that A. J. Anderson indorsed said payments upon the $300 note aforesaid,— a fact which the defendants first learned in November, 1896, when A. J. Anderson sent them the $300 note as fully paid; and that upon receiving said note they repudiated the transaction, and disaffirmed the same, and informed A. J. Anderson that said note was obtained by misrepresentations and would not be paid.

(6) That A. J. Anderson came to Madison on December 9, 1896, and in the nighttime caused judgment to be entered on the judgment note in suit for $1,060 and costs, and also caused execution to be issued thereon to the sheriff, who seized the defendants' stock of goods; and that A. J. Anderson then stated that he made said seizure in order to compel the defendants to secure *Helmer Hanson's* debt, and that, if they did not, the sheriff would remain in possession and destroy the defendants' business; and that under the influence of these threats the defendants gave the note for $300, and thereupon A. J. Anderson released said levy; and that all the acts aforesaid were wrongful, unlawful, and malicious, and done in order to cause the defendants by duress to execute said note.

(7) That by the entry of said judgment the defendants' credit was destroyed, and that afterwards such proceedings were had in the circuit court for Dane county that said judgment was set aside and declared null and void and a judgment for costs rendered in favor of the defendants; and that the note upon which said judgment was entered is the same note in suit in this action.

(8) That the defendants have been injured by the said malicious and wilful acts in the sum of $5,000. " That the said A. J. Anderson, at the time of the doing of all these acts, was *conspiring with the said plaintiffs in this action to*

*obtain apparent legal title of all the assets of the Wagg-Anderson Woolen Company* for the purpose of establishing and carrying on said business in the name of Anderson & Co., who are these plaintiffs, for the benefit of him, the said A. J. Anderson, and permitting the said A. J. Anderson to use their name in all of said matters, purchasing of said assets and carrying on the said former business of the Wagg-Anderson Woolen Company for the benefit of him, the said A. J. Anderson; and *that all of the said wrongful acts with respect to the entry of said judgment against these defendants were done by the said A. J. Anderson under the general authority and permission of these plaintiffs, and for his own use and benefit.*

"These defendants allege that all matters, including the wrecking of the Wagg-Anderson Woolen Company by the said A. J. Anderson, and the appointment of the various receivers, and the securing of the various compromises, and the procuring of the various decrees in the circuit courts for Cook county authorizing the same, and the final transferring of the assets of the Wagg-Anderson Woolen Company to the said plaintiffs, and the entry of the said judgment, were part of the same plan for the benefit of the said A. J. Anderson; and that the said plaintiffs had permitted the said Anderson to use their names in all of said matters to enable him to avoid and escape liability upon his own part with respect to wrongful acts done by him in regard to said business, and especially the wrongful and malicious entry of said judgment on cognovit against these defendants; and these defendants allege that in equity and justice the said plaintiffs should be and are responsible for any damages occasioned by said wrongful act of the said A. J. Anderson in carrying out said schemes, and that the same should be equitably set off against any claim which may exist against the defendants arising out of the note or otherwise."

Upon the trial it was proven without substantial dispute

that the plaintiffs bought the note in suit, with the other assets of the Wagg-Anderson Woolen Company, at judicial sale on the 28th day of September, 1896, and paid sufficient consideration therefor.   A demurrer *ore tenus* to the counterclaim was sustained by the court, and all testimony thereunder rejected, and a verdict was directed for the plaintiffs, and from judgment entered on such verdict the defendants appeal.

For the appellants there was a brief by *Hall & Sheldon*, attorneys, and a brief in reply signed also by *A. R. Bushnell*, of counsel, and oral argument by *Mr. F. W. Hall* and *Mr. Bushnell*.

For the respondents there was a brief by *Jones & Stevens*, and oral argument by *B. W. Jones*.

WINSLOW, J.   The testimony was undisputed in this case that the plaintiffs purchased the assets of the insolvent Wagg-Anderson Company, including the note in suit, at receiver's sale, and paid value for them, and that the sale was confirmed by the court.   Whether they intended to place such assets in the hands of A. J. Anderson to manage as his own while retaining merely nominal title themselves, or made the purchase with a view to allow him to reap the benefit therefrom, are questions which might possibly be material to creditors of the Wagg-Anderson Woolen Company, or to creditors of A. J. Anderson, but it is not perceived how they can be material at all to these defendants, who belong in neither of those classes.   The transfer was certainly perfectly good so far as the debtors of the Wagg-Anderson Company are concerned.

The only question of any difficulty in the case is the question whether the counterclaim was sufficient.   If any cause of action be set forth in the counterclaim at all, it is evidently one for malicious abuse of legal process.   Assuming (but not deciding) that such a cause of action existing against

the plaintiffs is properly pleadable as a counterclaim in this case, still we think that there are not sufficient allegations showing the plaintiffs to be responsible for the alleged wrong. The counterclaim shows distinctly that A. J. Anderson was the man who committed all the overt acts, and it is attempted to connect the plaintiffs therewith by allegations of conspiracy. We think, however, that these allegations clearly fall short of alleging that the plaintiffs at any time conspired with A. J. Anderson to injure the defendants by abusing the process of the court. Fairly and reasonably construed, the conspiracy alleged is a conspiracy to procure the title of the corporate assets of the defunct corporation in the name of the plaintiffs, but for the real benefit of A. J. Anderson. This is the sum and substance of the conspiracy as first charged, and afterwards referred to as " the same plan for the benefit of A. J. Anderson." The acts complained of are no part of such a conspiracy. Had the defendants desired to charge that the plaintiffs conspired with A. J. Anderson to injure and oppress the defendants by the malicious use of the process of the court, such an allegation would have been easy to make; but it seems to have been industriously avoided. The charge that the plaintiffs permitted A. J. Anderson to "use their names in all of said matters " is unavailing, because the judgment upon cognovit was not entered in their names, but in the name of the Wagg-Anderson Woolen Company, and the execution must have followed the judgment. Upon this ground, if upon no other, we think that the counterclaim was insufficient.

*By the Court.*— Judgment affirmed.